IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF | ) |
| | ) Case No. BK 09-41543 |
| MID AMERICA AGRI | ) Chapter 11 |
| PRODUCTS / HORIZON, LLC | ) |
| | ) |
| Debtor. | ) |
| | ) |

**MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§ 105(A) AND 363, FED. R. BANK P. 6004, AND LOCAL R. BANK. P. 6004-1 AUTHORIZING AND APPROVING THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES**

COMES NOW Mid America Agri Products/Horizon, LLC, debtor and debtor-in-possession ("Debtor") in the above entitled case, and in support of its motion ("Motion") for Order pursuant to 11 U.S.C. §§ 105(a) and 363, Fed. R. Bank. P. ("Rule") 6004, and Local R. Bank. P. ("Local Rule") 6004-1 Authorizing and Approving the Sale of Substantially all of Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances, states and alleges as follows:

**Jurisdiction and Venue**

1. On June 3, 2009, (the "Petition Date"), Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Nebraska.

2. Debtor has remained in possession of its assets and has continued to operate its business as debtor-in-possession in accordance with 11 U.S.C. §§ 1107 and 1108.

3. An Official Committee of Unsecured Creditors has not been appointed in this case.

OMA-292051-2

IN RE MID AMERICA AGRI
PRODUCTS / HORIZON, LLC
Case No. BK 09-41543
Motion for Order Approving
Sale of Debtor's Assets Free and Clear

4. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to one or more provisions of 28 U.S.C. § 157(b). Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a) and 363, Rule 6004, and Local Rule 6004-1. As this Motion does not seek to have the requested order granting this Motion entered within the first 20 days after the Petition Date, Rule 6003 is inapplicable to this Motion.

## Procedural Background

6. Debtor has filed contemporaneously herewith, a motion to approve the assumption and assignment of executory contracts and unexpired leases to the successful bidder for the Assets (as defined below) ("Assumption and Assignment Motion") and a motion to approve the bidding procedures to be implemented in connection with the Sale ("Bidding Motion").

## Preliminary Statement

### I. The Debtor's Business Operations

7. The Debtor is a producer of ethanol, an alcohol derived principally from corn in the United States. Ethanol is marketed as a gasoline blend component that serves as a clean air additive, an octane enhancer and a renewable fuel resource. It is blended with gasoline (i) as an oxygenate to help meet fuel emission standards; (ii) to improve gasoline performance by increasing octane levels, and (iii) to extend fuel supplies. A small but growing amount of ethanol is also used as E85, a renewable fuels-driven blend composed of up to 85% ethanol.

8. The Debtor currently owns and operates a dry mill ethanol production facility located in the City of Cambridge, Nebraska (the "Facility"). The Facility is situated on a 72-acre site in

IN RE MID AMERICA AGRI
PRODUCTS / HORIZON, LLC
Case No. BK 09-41543
Motion for Order Approving
Sale of Debtor's Assets Free and Clear

the southwest quarter of Section 28 and the southeast quarter of Section 29, both in Township 4 North, Range 25 West, Furnas County Nebraska. The Facility has the capability to produce 40 million gallons per year ("MGY") of fuel grade ethanol and 420,000 tons per year of wet distillers grain with solubles ("WDGS") from locally grown corn, while consuming 1,125 million standard cubic feet of natural gas per year.

9. In early 2004, a pilot plant was constructed at the site of the Facility by Horizon Renewable Energy, LLC, a predecessor of the Debtor, pursuant to a construction/construction management agreement with Lundeen's, Incorporated ("Lundeen's"), which had worked in construction and construction management for more than thirty years. Upon completion of the pilot plant in May 2004, the Facility became qualified for certain ethanol production incentive credits offered by the State of Nebraska. In December 2004, the Debtor entered into a Construction Management Agreement (the "CMA") with Lundeen's. On September 12, 2005, prior to initial construction activities of the Facility, Lundeen's assigned its right, title, and interest in the CMA to Mid America Bio Energy & Commodities, LLC, a Nebraska limited liability company ("MABE"), which completed all obligations of the Construction Manager as defined under the CMA.

10. Additionally, in August 2005, Debtor entered into an Engineering, Procurement, and Construction Agreement ("EPC") with The Industrial Company ("TIC"), a Delaware corporation, for the design, engineering, procurement, construction, start-up, and test of the Facility, with the ethanol process design being supplied by Delta-T Corporation ("Delta-T"). In May 2008, TIC completed the construction of the Facility, which had a nameplate capacity of 40

OMA-292051-2

IN RE MID AMERICA AGRI
PRODUCTS / HORIZON, LLC
Case No. BK 09-41543
Motion for Order Approving
Sale of Debtor's Assets Free and Clear

MGY of fuel grade ethanol and achieved certain required production tests at 110% of the nameplate capacity.

11.  In May 2005, Debtor entered into an Ethanol Purchase and Sale Agreement with Noble Americas Corporation ("Noble"), a Delaware corporation, under which Noble procured the exclusive right, and has agreed to purchase all of the fuel ethanol produced at the Facility. Additionally, in conjunction with the Debtor, Noble was obligated to form a marketing committee to review market conditions, develop marketing strategies, develop an annual joint marketing plan, and evaluate risk management strategies.

12.  The Debtor is subject to significant market risk with respect to the price of ethanol, its principal product, as well as the price and availability of corn, the Debtor's principal commodity used in its ethanol production process. Ethanol prices are generally influenced by the supply and demand for gasoline, the availability of substitutes and the effect of related laws and regulations. Likewise, the availability and price of corn are subject to wide fluctuations due to unpredictable factors such as weather conditions during the corn growing season, carry-over from the previous crop year, current crop yield, governmental policies with respect to agriculture and international supply and demand. Although corn is the Debtor's most significant raw material production cost, other major costs include chemicals, enzymes, natural gas, transportation costs, and denaturant.

## II. Events Leading to the Chapter 11 Cases

13.  Debtor's liquidity is materially affected by uncertain commodity prices for corn, natural gas and ethanol. Corn and ethanol prices were highly volatile during 2008 and are impacted by a number of factors beyond the Debtor's control. In addition, the costs of producing

OMA-292051-2

IN RE MID AMERICA AGRI
PRODUCTS / HORIZON, LLC
Case No. BK 09-41543
Motion for Order Approving
Sale of Debtor's Assets Free and Clear

ethanol, even apart from corn, have been rising over the past year. Ultimately, sizeable fluctuations in the price of corn, chemicals, enzymes, natural gas and denaturant; obligations to service the Debtor's debt in the face of continued lack of liquidity in the credit markets; and the inability to raise additional investment capital from depressed equity markets have precipitated this Chapter 11 case. Additionally, Debtor faced several operating obstacles which proved unsurmountable given the market conditions faced by Debtor, including:

a. <u>The Ethanol to Corn Spread</u>. The Debtor's gross margin depends principally on the spread between ethanol and corn prices (the "<u>Crush Margin</u>"). As noted above, corn is the predominant feedstock used in ethanol production. However, corn prices do not necessarily correlate with the price of ethanol, since each market is affected by unique supply and demand conditions. Factors affecting the grain markets, such as weather, crop conditions, and international trade, are distinct from those that affect ethanol, such as crude oil and gasoline supply and demand factors, the regulatory climate, and the availability of other fuel oxygenates. In early 2006, the Crush Margin was at historically high levels. Since then, the Crush Margin has narrowed significantly. Based on the current Crush Margin, the ethanol industry is operating at or near breakeven cash margins.

b. <u>Rising Conversion Costs</u>. Conversion costs per gallon are an important factor that affects liquidity. Conversion costs represent the cost of converting corn to ethanol and include production salaries, wages and benefits, utilities, maintenance, chemicals, enzymes, denaturant, insurance, materials, and supplies. As the Crush Margin has narrowed, the conversion costs—the costs of converting corn into ethanol—have risen. The total dollars spent on conversion costs increased, principally as a result of higher prices for chemicals and enzymes, as well as higher utility costs and higher maintenance costs.

c. <u>Declining Liquidity</u>. A number of factors have contributed to the Debtor's declining liquidity. Specifically, the Debtor's operating results continued to decline in the fourth quarter of 2008, with the Debtor operating at negative net margins principally as a result of the declining Crush Margin. As a result, the Debtor does not have sufficient available liquidity to meet anticipated working capital, debt service, and other liquidity needs.

14. As a result of the foregoing, given the severe financial pressures it is facing and the short time within which to address it, the Debtor was unsuccessful in its efforts to resolve its

IN RE MID AMERICA AGRI
PRODUCTS / HORIZON, LLC
Case No. BK 09-41543
Motion for Order Approving
Sale of Debtor's Assets Free and Clear

liquidity crisis outside the bankruptcy forum and, accordingly, filed this Chapter 11 case to preserve and maximize the value of its assets for the benefit of all stakeholders.

### III. Corporate History and Capital Structure

15.   The Debtor was originally formed as Mid America Agri Products, LLC, under the laws of the state of Delaware. In October 2006, Debtor, along with Mid America Agri Products Wheatland, LLC ("MAAPW"), was reorganized such that the Debtor and MAAPW became wholly-owned subsidiaries of Standard Ethanol, LLC, a Delaware limited liability company ("Standard"). To accomplish the reorganization, two new subsidiaries of Standard were created: (1) Horizon Merger Sub, LLC, a Delaware limited liability Company ("Horizon Merger Sub"); and (2) Wheatland Merger Sub, LLC, a Delaware limited liability company ("Wheatland Merger Sub"). Horizon Merger Sub then merged with and into the Debtor, with the Debtor as the surviving entity (a similar merger was conducted with respect to Wheatland Merger Sub). Pursuant to the reorganization, Debtor became a wholly owned subsidiary of Standard and all members of Debtor before the reorganization became members of Standard.

16.   Debtor is a party to a credit facility, dated August 18, 2006, as amended and restated pursuant to the Amended and Restated Credit Agreement, dated December 5, 2006 (as has been or may be further amended, restated, supplemented, or otherwise modified from time to time, the "<u>Credit Agreement</u>"), among Debtor, as borrower, The Bank of New York Mellon (formerly known as The Bank of New York), as Collateral Agent, Société Générale, as Administrative Agent, SG Americas Securities, LLC, as Arranger, and financial institutions from time to time party thereto, as Lenders ("Secured Lenders"). The Credit Agreement contains: (i) a construction loan facility, (ii) a term loan facility and (iii) a working capital loan facility. Upon

OMA-292051-2

IN RE MID AMERICA AGRI
PRODUCTS / HORIZON, LLC
Case No. BK 09-41543
Motion for Order Approving
Sale of Debtor's Assets Free and Clear

the Conversion Date, as defined by the Credit Agreement, all outstanding construction loans were automatically converted into term loans. Debtor's obligations under the Credit Agreement are secured by perfected, first priority liens on and security interests in substantially all of the Debtor's real and personal property, including, without limitation, its (a) buildings and equipment, (b) assigned agreements and assigned insurance policies, (c) shares of stock or other equity interest, (d) inventory and accounts, (e) rents, revenues, issues, profits, dividends, royalties, income, commission, products, payments, receipts, proceeds, and other benefits, (f) governmental approvals, (g) supporting obligations, rights, and claims of the Debtor, (h) intellectual property, (i) records, (j) compensation, awards, damages, judgments, settlements, payments, rights of action, and proceeds arising from or in connection with any Taking, (k) rights to proceeds, remedies, benefits, and privileges of the Borrower under project collateral security instruments, (l) all other personal property and fixtures, (m) all minerals, oil, gases, and petroleum, and all related agreements, (n) monies and investments, (o) commercial tort claims, (p) all indebtedness owed to the Debtor and (q) all other cash and non-cash products, additions, offsprings, substitutions, replacements, proceeds and accessions of any of the foregoing or any proceeds thereof (the "Pre-Petition Collateral").

17.    In connection with the Credit Agreement, the Debtor entered into that certain ISDA Master Agreement, dated September 18, 2006, between the Debtor and Société Générale, New York Branch as secured swap counterparty (the "Secured Swap Counterparty") and the Schedule, Confirmation and any other documents related thereto (collectively, each as amended, amended and restated, supplemented or otherwise modified from time to time, the "Required Hedging Agreement").

OMA-292051-2

IN RE MID AMERICA AGRI
PRODUCTS / HORIZON, LLC
Case No. BK 09-41543
Motion for Order Approving
Sale of Debtor's Assets Free and Clear

18.  As of the Petition Date, principal borrowings outstanding under the Credit Agreement totaled (i) $56,971,500 under the term loan facility, (ii) $2,562,182 under the working capital loan facility; and (iii) approximately $4.43 million is due and owing to the Secured Swap Counterparty under the Required Hedging Agreement (collectively referred to herein as the "Prepetition Debt").

19.  For the fiscal year ending December 31, 2008, Debtor had sales of ethanol totaling approximately 34.9 million gallons at an average price of approximately $2.03 per gallon, resulting in sales of approximately $70.9 million. As of December 31, 2008, Debtor's financial statements reflected assets totaling approximately $92,656,349 and liabilities totaling approximately $70,664,631. However, Debtor's ethanol facility is currently in 'cold-idle', an industry recognized term of art indicating that the assets are being maintained but that no ethanol is being produced.

## Proposed Sale of Assets

20.  Debtor has concluded that the best mechanism for maximizing the value of its assets on a going concern basis is through the sale of its assets pursuant to 11 U.S.C. § 363 ("Sale") by way of public auction pursuant to the terms set forth in the Bidding Motion ("Sale Auction").

21.  Therefore, Debtor believes that it is in the estate's best interests to sell substantially all of its assets to the Successful Bidder (as defined in the Bidding Motion) at the Sale Auction. The Sale will provide the best economic opportunity to realize the highest value for Debtor's assets.

OMA-292051-2

IN RE MID AMERICA AGRI
PRODUCTS / HORIZON, LLC
Case No. BK 09-41543
Motion for Order Approving
Sale of Debtor's Assets Free and Clear

22. During April/May 2009 Development Specialists, Inc. ("DSI") sent introduction letters regarding the Debtor's assets and business to approximately 150 potential buyers – both strategic and financial – describing the overall status of the project and detailing available due diligence resources, including the availability of an electronic data room with relevant construction, operational, and accounting information as well as the ability for interested parties to arrange Q&A calls with Debtor's management team. Throughout the sales process DSI has communicated directly with approximately 25 potential buyers regarding the status of the project and has received signed confidentiality agreements from 13 firms.

DSI has organized and communicated information and data requests from interested parties to Debtor's management and has also provided status updates to all parties regarding the filing of the chapter 11 bankruptcy petition and ongoing updates regarding the filing of a sales procedure motion. In addition to summary information contained in the electronic data room, DSI has also worked with Debtor's management to provide supporting financial data as requested to interested parties – including samples of historical invoices for utility providers, freight and shipping information, and commodity pricing estimates to assist potential buyers in constructing relevant financial models during the due diligence process.

### Assets to Be Sold

23. Debtor proposes to offer to sell substantially all of its assets (the "Assets"). The Assets to be sold consist of, but are not limited to:

a. That certain real estate more particularly described on Exhibit "A" hereto along with the improvements thereto, and

b. all inventory, equipment, general intangibles, accounts receivable and work in process, intellectual property including trademarks, service marks, trade names,

OMA-292051-2

IN RE MID AMERICA AGRI
PRODUCTS / HORIZON, LLC
Case No. BK 09-41543
Motion for Order Approving
Sale of Debtor's Assets Free and Clear

    software, franchises, patents, formulas, slogans, logo types and other intangible rights owned, utilized or held for use and all intellectual property rights with respect to the same, all supplies, equipment and tools.

24.     The Assets include the right to assume all rights under executory contracts and unexpired leases.

### Debtor's Unexpired Leases and Executory Contracts

25.     As part of the sale of the Assets, the Debtor seeks authority to assume and assign certain executory contracts and unexpired leases pursuant to the Assignment and Assumption Procedures detailed in the Assumption and Assignment Motion. In support of such relief, the Debtor refers the Court and the parties in interest to the authority set forth in the Assumption and Assignment Motion.

### Applicable Authority to Approve the Sale Free and Clear of All Liens, Claims, Interests and Encumbrances

#### The Sale Should be Authorized Pursuant to Section 363(b)(1)

26.     Pursuant to Bankruptcy Code § 105(a), a bankruptcy court "may issue any order process or judgment that is necessary or appropriate to carry out the provision of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Bankruptcy Code § 363(b)(1) provides in relevant part, that the Debtor, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

27.     The proposed use, sale, or lease of property of the estate may be approved under Bankruptcy Code § 363(b) if it is supported by sound business justification. See e.g. Meyers v. Martin (In Re Martin), 91 F.3d 389, 395 (3rd Cir 1996); *Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In Re ContinentalAir Lines)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or [a] debtor-in-possession...to satisfy its fiduciary duty to the...creditors,

OMA-292051-2

Case 09-41543-TJM    Doc 99    Filed 08/28/09    Entered 08/28/09 16:39:38    Desc Main
Document    Page 11 of 16

IN RE MID AMERICA AGRI
PRODUCTS / HORIZON, LLC
Case No. BK 09-41543
Motion for Order Approving
Sale of Debtor's Assets Free and Clear

and equity holder[s], there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business." *Id.*). In reviewing a proposed sale of assets, a bankruptcy court should give deference to the Debtor's business judgment. *Esposito v. Title Ins. Co. (In re Fernwood Mkts.)*, 73 B.R. 616, 621 n.2 (Bankr. E.D. Pa 1987); *In Re Crutcher Resource Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale" *Id.*). *See also Stephens Industries, Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986) and *In re Channel One Communications, Inc.*, 117 BR 493 (Bankr. E.D. Mo. 1990).

28. Debtor has undertaken extensive efforts to reorganize its operations outside of bankruptcy, though these efforts ultimately proved unsuccessful. Ultimately, Debtor, after evaluating various means of reorganization, and soliciting the input of Debtor's secured lenders and professional consultants, has determined, in its business judgment, that the Sale of the Assets will maximize the value of those Assets to the estate and will be in the best interests of the creditors. Debtor submits that the Sale process will result in competitive bidding and an acceptable purchase price for the Assets.

29. In addition to showing a business justification, Debtor believes that courts, when reviewing a sale under §363, should also examine whether: (a) the price is fair and reasonable; (b) the Successful Bidder acted in good faith; and (c) adequate notice was provided. *In re Channel One Communications, Inc.*, 117 BR 493, 496 (Bankr. E.D. Mo. 1990).

IN RE MID AMERICA AGRI
PRODUCTS / HORIZON, LLC
Case No. BK 09-41543
Motion for Order Approving
Sale of Debtor's Assets Free and Clear

30. By virtue of the fact that the Sale to Successful Bidder will be subject to a public auction, the good faith of the Successful Bidder and the reasonableness of the purchase price will be, per se, established.

31. Additionally, Debtor will have entered into the Sale only after an extensive and thorough marketing process. Debtor believes that this process, which was initiated prior to the filing of the initial petition herein, represents the optimal method to obtain the highest and best offer for the Assets and the consideration to be paid will, therefore, be fair and reasonable. Any doubt as to the reasonableness of the purchase price will be resolved by the fact that the Sale is subject to competing bids, thereby ensuring Debtor's ability to receive the highest and best offer for the Assets.

32. The last review that should be conducted by this Court is determining whether parties received adequate notice of this Motion. Debtor will provide adequate notice of the hearing on this Motion by providing notice to: (i) all entities known to have expressed an interest in a transaction with respect to the Assets; (ii) all entities known to have asserted any lien, claim, interest or encumbrance in or upon the Assets; (iii) the United States Trustee's office; (iv) the Internal Revenue Service; (v) all entities on the Service list for this case; and (vi) any Official Committee of Unsecured Creditors as may be appointed in this Chapter 11 Case ("Sale Notice"). The Sale Notice is reasonably calculated to provide timely and adequate notice to the Debtor's major creditor constituencies, and accordingly, is sufficient for entry of the requested order approving Sale.

33. Based on the forgoing, the Sale satisfies all of the requisite conditions for authorization under §363(b) of the Bankruptcy Code.

OMA-292051-2

IN RE MID AMERICA AGRI
PRODUCTS / HORIZON, LLC
Case No. BK 09-41543
Motion for Order Approving
Sale of Debtor's Assets Free and Clear

<u>The Sale Satisfies the Requirements of 11 U.S.C. § 363(f) for a Sale
Free and Clear of Liens, Claims, Interests and Encumbrances</u>

34.     Pursuant to Section 363(f) of the Bankruptcy Code, the Debtor seeks authority to sell the Assets free and clear of all liens, claims, interests and encumbrances, with such liens, claims, interests and encumbrances to attach to the proceeds of the Sale. This Section provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interests in such property of an entity other than the estate, only if:
>
> (i) applicable non-bankruptcy law permits sale of such property free and clear of such interests;
>
> (ii) such entity consents;
>
> (iii) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (iv) such interest is in bona fide dispute; or
>
> (v) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

35.     Debtor submits that, with respect to each such interest, at least one of the five conditions of section § 363(f) is satisfied, and that any such interest will be adequately protected by either being paid in full at the time of the closing or by having the interest attach to the net proceeds of the Sale. Specifically, all parties in interest have been given an opportunity to object and to the extent such parties have not filed objections, or such objections have been withdrawn, the Debtor submits that all such parties holding interests in the Assets have consented pursuant to § 363(f)(2) of the Bankruptcy Code. Further, the Debtor believes that all such holders of interests could be forced in a legal or equitable proceeding to accept money satisfaction of such interest, and therefore the Assets can be sold free and clear of such interests pursuant to § 363(f)(5) of the Bankruptcy Code. Debtor accordingly requests authority to convey the Assets to

OMA-292051-2

IN RE MID AMERICA AGRI PRODUCTS / HORIZON, LLC
Case No. BK 09-41543
Motion for Order Approving
Sale of Debtor's Assets Free and Clear

the Successful Bidder free and clear of all interests (except for interests, if any, that are to be assumed liabilities under the express terms of the asset purchase agreement executed by the Successful Bidder), with such interests to attach to the proceeds of the Sale, with the same validity (or invalidity), priority, and perfection as existed immediately prior to the Sale.

36. Further, the Secured Lenders have a perfected first priority lien on the Assets. In light of this lien, it is proposed that the Secured Lenders will retain their rights to credit bid in accordance with § 363(k). It is also proposed that the proceeds of the Sale be paid by the Successful Bidder directly to the Secured Lenders.

37. Having exercised sound business judgment, Debtor has determined that the Sale of the Assets free and clear of all liens, claims, encumbrances and interests is in the best interests of Debtor's estate and the creditors thereof and that the Sale should be approved.

<u>A Finding of Good Faith of the Successful Bidder Pursuant to Section 363(m) is Appropriate</u>

38. Section 363(m) of the Bankruptcy Code provides the following:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

39. The Bankruptcy Code does not define good faith. However, "[t]he criteria to be considered when making an evaluation of good faith are almost universally stated as follows: "The requirement that a purchaser act in good faith...speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a...good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee,

Case 09-41543-TJM    Doc 99    Filed 08/28/09    Entered 08/28/09 16:39:38    Desc Main Document    Page 15 of 16

IN RE MID AMERICA AGRI PRODUCTS / HORIZON, LLC
Case No. BK 09-41543
Motion for Order Approving
Sale of Debtor's Assets Free and Clear

or an attempt to take grossly unfair advantage of other bidders." *In re Rock Industries Machinery Corp.*, 572 F.2d 1195, 1998 (7th Cir. 1978)." *In re Apex Oil Co.*, 92 B.R. 847, 869 (Bkrtcy. E.D. Mo. 1988).

40.  Debtor submits, and will present evidence at the Sale confirmation hearing, that as set forth above, the Sale will result in a transaction in which the Successful Bidder has at all times acted in good faith. Debtor, therefore, requests that the Court make a finding that the Successful Bidder has purchased the Assets and assumed the Assumed Contracts in good faith within the meaning of §363(m) of the Bankruptcy Code.

### Relief under Rule 6004(h) is Appropriate in this Case

41.  Rule 6004(h) provides that an order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise. In order to permit the Sale to proceed as expeditiously as possible and to avoid further degradation or loss of value to the Assets, good cause exists to waive the 10 day stay provided in Rule 6004(h).

### Conclusion

**WHEREFORE**, Mid America Agri Products / Horizon, LLC, Debtor in the above captioned Bankruptcy Case, respectfully prays this Court enter an order in substantially the same form as that attached hereto: (1) granting this Motion in full; (2) overruling all objections to this Motion; (3) approving and authorizing the sale of substantially all Debtor's Assets free and clear of liens, claims, interests and encumbrances; (4) waiving the 10 day stay provided in Rule 6004(h); and (5) granting any other relief at equity or law this Court deems necessary or appropriate.

OMA-292051-2

IN RE MID AMERICA AGRI
PRODUCTS / HORIZON, LLC
Case No. BK 09-41543
Motion for Order Approving
Sale of Debtor's Assets Free and Clear

    Respectfully submitted this 28 day of August, 2009.

                                                 **MID AMERICA AGRI**
                                                 **PRODUCTS / HORIZON LLC**
                                                 Debtor,

                                     By: _____
                                         **Robert V. Ginn (No. 15061)**
                                          **Patrick R. Turner (No. 23461)**
                                          **Husch Blackwell Sanders, LLP**
                                          1620 Dodge Street
                                          Suite 2100
                                          Omaha, Nebraska 68102
                                          Tel. No. 402-964-5000
                                          Fax No. 402-964-5050

OMA-292051-2